UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ROBERT GARCEAU, ET AL.,

       Plaintiff,

v.                                            Case No. 12-cv-15513
                                            Paul D. Borman
CITY OF FLINT, ET AL.,              United States District Judge

       Defendant.
_____/

## OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO PARTIALLY DISMISS (Dkt. No. 7)

       The matter before the Court is Defendants' Motion to Partially Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) filed on February 4, 2013.  (Dkt. No. 7).  Plaintiff filed a response (Dkt. No. 12) and Defendants filed a reply (Dkt. No. 14).

       The oral argument on this matter was held Wednesday, October 16, 2013 at 2:00 PM. For the following reasons, the Court GRANTS IN PART and DENIES IN PART Defendants' Motion to Dismiss.

### I.  BACKGROUND

       This is a class action suit that arises from allegations of reverse race discrimination against Defendants the City of Flint, Alvern Lock the Chief of Police of the City of Flint, and Darryl Patterson a Captain in the Flint Police Department.  Both individual Defendants are being sued in their individual capacity.  (Second Am. Compl. ¶¶ 5, 6).  This action was originally filed on December 17, 2012.  (Dkt. No. 1).  An amended complaint was filed on December 28, 2012.  (Dkt. No. 5).  Then, by agreement of the parties, Plaintiffs filed a Second Amended Complaint

on January 29, 2013.  (Dkt. No. 6).

Plaintiffs allege that Defendants had a "policy, rule, custom and/or practice of favoring African-American/black Police Officers over Caucasian/white Police Officers" in their employment practices, including but not limited to provisional promotions.  (Second Am. Compl. ¶ 8).  Plaintiffs also allege that Defendants harassed and retaliated against Caucasian/white Police Officers that opposed this policy.  (*Id.* ¶ 9).

Plaintiffs state that on June 7, 2012, Defendants administered a "sergeant test" to African-American/black police officers to determine if they were fit to continue serving pursuant to their provisional promotions as sergeants.  (*Id.* ¶ 22).  On August 12, 2012, the results of the test showed that certain officers had not passed the test.  (*Id.* ¶ 23).  Despite their failing scores, Defendants Lock and Patterson allowed these police officers to retain their provisional promotions.  (*Id.* ¶ 24).  On August 15, 2012, Defendant Lock issued a memorandum that set forth which officers were provisionally promoted to sergeant.  (*Id.* ¶ 26, Ex. 2).  This list included five officers that had flunked the "sergeant test".  (*Id.*, Ex. 2).  Defendant Patterson had participated in the decision-making process which led to these provisional promotions.  (*Id.* ¶ 28).

On August 29, 2012, Plaintiffs filed a "class action grievance" which complained the promotions violated their collective bargaining agreement.  (*Id.* ¶ 31, Ex. 3, Grievance). Defendant Patterson responded to the class action grievance by stating "Qualified employees were chosen for temporary position."  (*Id.* ¶ 32, Ex. 3).  Plaintiffs then allege that Defendants began to harass and retaliate against Plaintiffs who "opposed and/or resisted" the discrimination. (*Id.* ¶ 33).  Defendants "accomplish[ed] [this retaliation and harassment] by increasing scrutiny

2

on Plaintiffs and/or meting out pretextual discipline to Plaintiffs." (*Id*.).

Plaintiffs allege that on September 15, 2012, Defendant Patterson gave a LEIN printout to another officer and advised him that the vehicles on the printout were improperly parked in the lots around the Police Station. (*Id*. ¶ 50, Ex. 4, Incident Report regarding LEIN). Plaintiffs allege this was an "attempt to discipline four Police Officers..." (*Id*.). Approximately two months later, Plaintiff Garceau sent a letter complaining of Defendant Patterson's use of the LEIN technology and that his and the other officers' rights were violated by Defendant Patterson's actions. (Ex. 4). At some point, Plaintiff Garceau was notified that he was to appear at a so-called "Loudermill hearing" which was the first discipline that Plaintiff Garceau had received in more than fifteen years as an officer. (*Id*. ¶ 52). On November 13, 2012, Plaintiff Alan Dickenson II, complained in writing about the harassment he was receiving from "command staff." (*Id*. ¶ 54, Ex. 5). On November 21, 2012, Plaintiffs allege that Defendant Lock made a threatening comment directed at Plaintiff Garceau at a staff meeting.

On December 17, 2012, Plaintiffs filed this action. (Dkt. No. 1). On January 11, 2013, Plaintiff Garceau received a three day suspension for "unsatisfactory performance" where a minority police officer with a "long history of bad discipline" only received an oral reprimand. (Second Am. Compl. ¶ 55). On January 15, 2013, Plaintiff Dickenson II, received an eight day, "extremely excessive," suspension for an undisclosed infraction. (*Id*. ¶ 56). Plaintiffs also allege the City Attorney noted that this lawsuit would create a lot of paperwork and a minority Sergeant of Internal Affairs stated that "Every time Garceau gets in trouble he wants to sue? Okay, then we'll document everything on Garceau from now on." (*Id*. ¶¶ 57, 58).

Defendants now move for this Court to find that Plaintiffs' Count II and III should be

3

dismissed for failure to state a claim. Defendants also ask that all claims against Defendant City of Flint be dismissed because Plaintiffs have not alleged the City did or failed to do anything that caused the violations. Finally, Defendants allege that Plaintiffs have failed to properly plead a claim of conspiracy.

## II.  LEGAL STANDARD

Fed. R. Civ. P. 12(b)(6) allows for the dismissal of a case where the complaint fails to state a claim upon which relief can be granted. When reviewing a motion to dismiss under Rule 12(b)(6), a court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *DirectTV, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007). But the court "need not accept as true legal conclusions or unwarranted factual inferences." *Id.* (quoting *Gregory v. Shelby County*, 220 F.3d 433, 446 (6th Cir. 2000)). "[L]egal conclusions masquerading as factual allegations will not suffice." *Eidson v. State of Term. Dep't of Children's Servs.*, 510 F.3d 631, 634 (6th Cir. 2007).

The Supreme Court explained that "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level...." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted). Dismissal is only appropriate if the plaintiff has failed to offer sufficient factual allegations that make the asserted claim plausible on its face. *Id.* at 570. In *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) the Supreme Court clarified the concept of "plausibility" stating:

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face."

> [*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556, 570 (2007)]. A claim has
> facial plausibility when the plaintiff pleads factual content that allows the court to
> draw the reasonable inference that the defendant is liable for the misconduct
> alleged. *Id*. at 556. The plausibility standard is not akin to a "probability
> requirement," but it asks for more than a sheer possibility that a defendant has
> acted unlawfully. *Ibid*. Where a complaint pleads facts that are "merely consistent
> with" a defendant's liability, it "stops short of the line between possibility and
> plausibility of 'entitlement to relief.'" *Id.*, at 557 (brackets omitted).

*Id*. at 678.  A plaintiff's factual allegations, while "assumed to be true, must do more than create speculation or suspicion of a legally cognizable cause of action; they must show *entitlement* to relief." *LULAC v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007) (citing *Twombly*, 550 U.S. at 555-556).  Thus, "[t]o state a valid claim, a complaint must contain either direct or inferential allegations respecting all the material elements to sustain recovery under some viable legal theory." *Bredesen*, 500 F.3d at 527 (citing *Twombly*, 550 U.S. at 562).

### III. ANALYSIS

Defendants now move this Court to dismiss Plaintiffs' claim of "Harassment and/or Retaliation based upon race in violation of Equal Protection rights asserted by Plaintiffs Dickenson II, Howe, Garceau and Wooster."  (Second Am. Compl. ¶¶ 44-65).  Plaintiffs base this "race retaliation" claim on both 42 U.S.C. § 1983 and § 1981.  For the following reasons the Court will dismiss this claim.

**A.** **Plaintiffs' Equal Protection Claims under § 1983 and § 1981**

Defendants first argue that Plaintiffs' claim for race retaliation based on the Fourteenth Amendment Equal Protection Clause must fail because there is no such cause of action that arises under § 1983.  Plaintiffs acquiesce in their briefing and "withdraw the Fourteenth Amendment retaliation claim, only."  (Plf. Br. at ix, 6).  Therefore, the Court need not reach this claim as Plaintiffs have stipulated to its dismissal.  Plaintiffs go on to assert that their race

5

retaliation claim properly arises under § 1981 and they have properly pled this action. (Second Am. Compl. ¶ 46). Defendants, however, argue that § 1981 only provides a cause of action against private entities.

The Court finds that the law is clear in the Sixth Circuit that there is no private cause of action arising from § 1981 against governmental entities or state actors in their official or individual capacities.[1]

"Section 1981 prohibits racial discrimination in the making and enforcement of contracts." *McCormick v. Miami Univ.*, 693 F.3d 654, 659 (6th Cir. 2012) (citing *Runyon v. McCrary*, 427 U.S. 160 (1976)). In *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701 (1989), "the Supreme Court found that § 1981's implicit cause of action does not extend to suits brought against state actors." *Arendale v. City of Memphis*, 519 F.3d 587, 594 (6th Cir. 2008). Two years after *Jett* was decided, Congress passed the Civil Rights Act of 1991 which amended § 1981. In relevant part, the amendment added subsection c, which states:

> (c) Protection against impairment
> The rights protected by this section are protected against impairment by nongovernmental discrimination and impairment under color of State law.

42 U.S.C. § 1981(c). This resulted in a split in the circuits on whether the amendment overruled *Jett* and created a private cause of action against state actors and governmental entities. *Arendale*, 519 F.3d at 596. In *Arendale*, the Sixth Circuit held *Jett* was not overruled and was still binding authority. *Id.* at 598-99. As a result, the court held the amendment did not create a separate cause of action under § 1981 against a state actor or a governmental entity. *Id.* (stating

---

[1] The Court notes that Plaintiffs did not address this issue during oral argument and therefore appear to have abandoned this claim as well.

"we hold that 'the express cause of action for damages created by § 1983 constitutes the exclusive federal remedy for violation of the rights guaranteed in § 1981 by state governmental units,' *Jett*, 491 U.S. at 733, no independent cause of action against municipalities is created by § 1981(c).").

Four years after the *Arendale* decision, the Sixth Circuit revisited § 1981 in *McCormick v. Miami University,* 693 F.3d 654 (6th Cir. 2012) to address the question of "whether § 1983's express cause of action against state actors precludes using § 1981 as a mechanism to sue state actors for money damages in their individual capacity." *Id.* at 659.  The court noted that *Jett* remains binding authority in the Sixth Circuit and that under *Jett's* reasoning, "this circuit has held that a plaintiff cannot use § 1981 to sue a state actor in his or her official capacity." *McCormick*, 693 F.3d at 660 (citing *Grinter v. Knight*, 532 F.3d 567, 577 (6th Cir. 2008)).  The court then went on to hold that "the reasoning of *Jett* is equally applicable to the § 1981 suits against state actors sued in their individual capacity" and therefore such a claim is barred.[2]

---

[2] The Sixth Circuit did recognize in a footnote that,

> there may be cases in which a plaintiff seeks to hold a state employee liable for § 1981 violations unrelated to the defendant's status as a state employee. Section § 1983, however, only permits suits against state actors – *i.e.* defendants who have exercised power possessed by virtue of state law and made possible only because they were clothed with the authority of state law.  If the defendant's alleged infringement of § 1981 is not fairly attributable to the state, nothing in our holding bars a plaintiff from bringing suit against the defendant under § 1981 as a private actor.  This was certainly not the case here because all three faculty members' alleged misconduct was related to their status as state employees.

*McCormick*, 693 F.3d at 661 n. 3 (internal citation omitted). Here, Plaintiffs have asserted their claims against state employees in their individual capacity and for alleged misconduct committed while employed by the state, not as private actors.  The Plaintiffs specifically allege that both individual Defendants were acting "under the color of law".  (Second Am. Compl. ¶¶ 5, 6).

*McCormick*, 693 F.3d at 661.

As the Sixth Circuit has specifically held that § 1981 cannot be used as a vehicle to sue municipalities or state actors in their official or individual capacities for money damages, Plaintiffs' § 1981 claim must be dismissed. In the instant case, Plaintiffs rely on *Johnson v. University of Cincinnati*, 215 F.3d 561 (6th Cir. 2000) for their argument that a plaintiff can recover under § 1981 for a claim of "race retaliation." (Plf. Br. at 7). In *Johnson*, the plaintiff brought an action against certain university officials alleging he was discriminated and retaliated against based on his advancement of minorities and women. The court found that plaintiff could bring his discrimination and retaliation claims against two officials in their individual capacities based on Title VII *and* § 1981.

First, this case is distinguishable from the current action because it predates *McCormick* which held that § 1981 cannot be the basis of a private action against state actors in their individual capacities. Further, *Johnson* is not relevant to the inquiry of whether Plaintiffs' stand-alone claim of retaliation based on the Fourteenth Amendment can proceed through a § 1981 cause of action. In *Johnson*, the Plaintiff also based his claim of retaliation on a Title VII action. In the instant case Plaintiff is seeking to assert this claim only under § 1981 which does not provide a private cause of action. It is also worth noting that the cases upon which the *Johnson* court relies upon, *Wilson v. Lear-Siegler, Inc.*, 558 F.2d 1266 (6th Cir. 1977) and *Alizadeh V. Safeway Stores, Inc.*, 802 F.2d 111 (5th Cir. 1986), both involve a plaintiff suing a private company - not a governmental entity or state actor.

For these reasons, the Court dismisses Plaintiffs' claim of 'race retaliation' under § 1981.

**B.      Retaliation in violation of the First Amendment (Count III)**

Plaintiffs allege a claim of "First Amendment Violations" in Count III of their Second Amended Complaint. To establish a case of retaliation for speech protected under the First amendment a plaintiff must allege he "(1) engaged in constitutionally protected conduct; (2) an adverse action was taken against plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) the adverse action was motivated at least in part by the plaintiff's protected conduct." *Fritz v. Charter Tp. of Comstock*, 592 F.3d 718, 723 (6th Cir. 2010). The Sixth Circuit recently noted that "[i]t is well-established that the federal government has a greater ability to curtail the free-speech rights of its employees than the public generally – though that ability is not boundless." *Housey v. Macomb County*, No. 12-1766, 2013 WL 4007736, *4 (6th Cir. Aug. 6, 2013). Because of this fact, the Supreme Court has devised a three-part framework to evaluate whether a public employee's speech is protected under the First Amendment. Therefore, a public employee's speech is protected only when: "(1) it touches on 'a matter of public concern,' *Connick* [*v. Myers*, 461 U.S. 138,] 146 (1983); (2) it is not uttered pursuant to the employee's 'official duties' but rather 'as a citizen,' *Garcetti v. Ceballos*, 547 U.S. 410, 421 (2006); and (3) the employee's interest in the speech outweighs the government's interest in promoting 'the effective and efficient fulfillment of its responsibilities to the public,' *Id*. at 450." *Housey*, 2013 WL 4007736, *4; *see also Weisbarth v. Geauga Park Dist*., 499 F.3d 538, (6th Cir. 2007).

In the instant case, Plaintiffs allege that the four "designated plaintiffs" engaged in a protected activity when they "raised and/or disclosed matters of 'public concern,' regarding (1) that police officers were "victims of race based discrimination, retaliation and harassment in violation of law"; (2) plaintiffs opposed the race based discrimination/retaliation and harassment

9

against Caucasian/white Police Officers that was being meted out by Defendants herein"; (3) Defendants "violated the LEIN machinery and/or LEIN checking mechanisms for their own personal purposes in violation of Plaintiffs' Constitutional rights." (Second Am. Compl. ¶ 69a). Further, Plaintiffs allege that they were retaliated against and/or punished by Defendants [] in such a way that it would chill an ordinarily firm victim, [], from raising the aforesaid matters of public concern" and there was a causal connection between the protected activity and retaliation or punishment. (Second Am. Compl. ¶¶ 69a - 69b).

Plaintiffs appear to argue in their briefing that they have successfully alleged three separate instances of protected First Amendment activities- the filing of a class action grievance protesting the promotions, complaints that Defendants misused LEIN, and the filing of the instant lawsuit. Defendants argue that all three of these claims fail either because there was no issue of public concern, Plaintiffs were speaking as citizens, the claim was not properly pled or there was no adverse action taken.

  1. Grievance

Defendants argue that Plaintiffs' class action grievance did not involve a matter of public concern and therefore, their claim based on this conduct fails. Plaintiffs argue that the class action grievance addresses a matter of concern because it addresses discrimination. To this end, Plaintiffs refer to the class action grievance in their briefing as "complaining about race discrimination that was perpetrated by the means of hopscotching over more senior police officers," (Plf. Br. at 9; *see also* Plf. Br. at 16, Plaintiffs state "[i]n our case, we have Plaintiffs who filed a 'class action' grievance complaining about ongoing and rampant discrimination in the operation of the police department for the City of Flint."). Plaintiffs' Second Amended

Complaint also refers to the class action grievance as "protesting the racial promotions." (Second Am. Compl. ¶¶ 51, 73).

"Speech touches upon a matter of public concern if it can be 'fairly considered as relating to any matter of political, social or other concern to the community.'" *Taylor v. Keith*, 338 F.3d 639, 644 (6th Cir. 2003) (quoting *Connick*, 461 U.S. at 146)). "Whether an employee's speech addresses a matter of public concern must be determined by the content, form, and context of a given statement, as revealed by the record as a whole." *Id.* (citation omitted). "In general, speech involves matters of public concern when it involves 'issues about which information is needed or appropriate to enable the members of society to make informed decisions about the operation of their government.'" *Albert v. Mitchell*, 42 Fed. Appx. 691, 693 (6th Cir. 2002) (quoting *Brandenburg v. Housing Authority of Irvine*, 253 F.3d 891, 898 (6th Cir. 2001)). However, "[i]nternal personnel disputes or complaints about an employer's performance are not such matters." *Id.* (citation omitted); *see also Brown v. City of Trenton*, 867 F.2d 318, 322 (6th Cir. 1989).

Defendants do not argue that allegations of racial discrimination are not a matter of public concern, rather, Defendants note that the grievance *fails to state any claim, complaint or insinuation* regarding any sort of discrimination.[3] The grievance, states "On 08/19/12 provisional promotions were made violating the current collective bargaining agreement. Senior officers who were next in line according to the bargaining agreement were passed over for the provisional promotion to the rank of Sergeant." (Second Am. Compl. Ex. 3, Grievance).

---

[3] The "class action grievance" also fails to evidence the names of any of the Plaintiffs (it is signed by a non-party). Plaintiffs fail to plead how Defendants identified Plaintiffs as the authors behind the "class action grievance".

Plaintiffs did not allege in the Second Amended Complaint that there were any statements or complaints outside of this class action grievance that would give rise to Defendants believing that this grievance actually concerned racial discrimination. Further, there is nothing in the record indicating that there was any complaint, verbal or otherwise, made to a superior regarding racial discrimination.

Therefore, where the grievance fails to address or implicate any sort of discrimination and the Second Amended Complaint is devoid of any allegations regarding how Defendants would have interpreted it differently, the Court need not address whether discrimination is a matter of public concern. The pertinent inquiry must be whether the Plaintiffs' class action grievance alleging promotions that violated a collective bargaining agreement is a "matter of public concern."

The Sixth Circuit has explained,

> [i]f the speech relates primarily to a matter of 'limited public interest' and does not 'seek to bring to light actual or potential wrongdoing or breach of public trust,' centering instead on matters primarily, if not exclusively 'of personal interest' to the employee such as employee grievances over internal working conditions, etc., that fact must be weighed in determining whether a matter of true public concern is involved...."

*Brown*, 867 F.2d at 322 (quoting *Jurgensen v. Fairfax County*, 745 F.2d 868, 879 (4th Cir. 1984)). In the current action, it does not appear that a complaint regarding promotions in violation of seniority in the police department would implicate a breach of the public trust.

In *Albert*, a corrections officer made complaints to his superiors about the conditions at the facility including concerns regarding "favoritism and unfairness in the assignments given and overtime opportunities afforded to corrections personnel..." *Albert*, 42 Fed. Appx. at 692. In

12

dismissing the case for failure to state a claim, the Sixth Circuit examined whether the plaintiff's complaints touched on a matter of public concern. The court held that "Albert's third allegation regarding his personal concerns over his personnel treatment may be of paramount importance to him, but whether one corrections officer receives a promotion, overtime, a valid request for a transfer, or in general is treated fairly does not effect the commonwealth." *Id*. at 693. Similar to *Albert*, a complaint regarding promotions not based on seniority or in violation of a collective bargaining agreement can be seen as one of "tantamount" importance to the officers but not affecting the commonwealth. Therefore, because the class action grievance is not a public concern, there is no protected conduct and Plaintiffs' claim for retaliation based on the filing of the grievance is dismissed.

      2.      Complaints about LEIN usage

Plaintiffs also argue that they have alleged a complaint about Defendants' alleged misuse of the LEIN system constitutes protected conduct because "ensuring compliance with the law" is a matter of public concern.[4]

The Court holds that Plaintiffs have failed to set forth a plausible claim of First Amendment retaliation regarding complaints of the LEIN technology. Indeed, from the Second Amended Complaint it is clear that any allegation regarding the misuse of the LEIN technology is alleged as *an example of retaliation* by Defendants rather than an instance of protected speech. In their briefing, Plaintiffs refer the Court to paragraph 72 which states:

---

[4] Plaintiffs' briefing does not specifically make allegations surrounding Plaintiff Garceau's single complaint about Defendant Patterson's use of LEIN. Rather, Plaintiffs' allegations deal with the actual use of LEIN as an attempt at discipline. (Second Am. Compl. 72).

13

> That, specifically, but not by way of limitation, right after the class action grievance [] was filed, Defendant Patterson unlawfully used the LEIN machine to attempt to discipline the four designated Plaintiffs herein, as this Court can see with its own eyes by the document attached...

(Second Am. Compl. ¶ 72). This allegation, however, does not evidence that Plaintiffs were engaging in any protected speech but rather it is merely an allegation stating that shortly after the class action grievance was filed, a Defendant allegedly used the LEIN technology to attempt to discipline Plaintiffs. Plaintiffs make no allegations concerning complaints regarding the LEIN usage or retaliation that followed that complaint.[5]

As noted in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), dismissal is appropriate if the plaintiff has failed to offer sufficient factual allegations that make the asserted claim plausible on its face. *Id.* at 570. Here, Plaintiffs have not asserted any facts that could be construed to construct a First Amendment retaliation claim from Defendants' conduct involving LEIN technology. Therefore, this claim fails.

3.  Lawsuit

---

[5] Plaintiffs contended at oral argument that this claim was valid because Plaintiff Garceau went outside the agency to complain about the Defendants' use of LEIN. Plaintiffs relied upon *Handy-Clay v. City of Memphis, Tennessee*, 695 F.3d 531 (6th Cir. 2012) for the argument that going outside the regular chain of command is so extraordinary that it weighs in favor of finding that a plaintiff is not speaking as a private citizen. *Id*. at 542-43. Here, the Court need not address whether Plaintiff Garceau was speaking as a private citizen as the Second Amended Complaint fails to set forth an adequate claim. Further, it is pertinent to note that Plaintiff Garceau's complaint "outside the regular chain of command" is attached to the Second Amended Complaint but not explained. In fact, it is unclear from the record to whom Plaintiff Garceau actually complained.

14

Finally, Plaintiffs allege that the filing of this lawsuit was protected speech.[6] Defendants' argue that because Plaintiffs have failed to allege an adverse action that post-dates the filing of this lawsuit, Plaintiffs have failed to set forth a claim. To this end, Defendants argue that a remark by a City Attorney regarding this lawsuit cannot amount to an adverse action. However, the Court notes that in addition to the remark by the defense attorney (Second Am. Compl. ¶ 79), Plaintiffs have also alleged in the Second Amended Complaint the excessive suspensions of Plaintiff Garceau and of Plaintiff Dickenson II, both of these suspensions post date the filing of this action. (Second Am. Compl. ¶¶ 77, 78).

Therefore, taking all the allegations in the Complaint as true, the Court finds that Plaintiffs have successfully alleged an adverse action that could be related to the filing of this lawsuit. This claim will go forward.

## C. Plaintiffs' Conspiracy Claims

Defendants argue Plaintiffs' claim of a conspiracy between Defendants must fail because Plaintiffs do not plead any specific facts to support their theory. Plaintiffs assert that they have properly pled a conspiracy claim and direct the Court to paragraph 37 which states:

> That the Defendants herein acted in concert with one another and aided and abetted one another in accomplishing and effecting their unlawful race policy and in effecting their unlawful retaliation policy, as well as in accomplishing the actions and consequences set forth herein, the exact nature and extent of which concerted activity is well known to Defendants, but not to Plaintiffs – yet.

---

[6] Although the Plaintiffs fail to specifically refer to this lawsuit in their Second Amended Complaint, the Court finds that this conduct falls under the general allegation that Plaintiffs "opposed the race based discrimination/retaliation and harassment against Caucasian/white Police Officers that was being meted out by Defendants herein." (Second Am. Compl. ¶ 69a(ii)).

(Second Am. Compl. ¶ 37).

The Court notes that Plaintiffs have failed to set forth an enumerated conspiracy claim in their Second Amended Complaint. Rather, Plaintiffs have merely inserted the language quoted above into each of the three asserted claims (*See* Second Am. Compl. ¶¶ 37, 59, and 81). Further, Plaintiffs have not set forth any particularized facts regarding conspiracy beyond these identical one paragraph recitations. The Court finds that under these circumstances, Plaintiffs' Second Amended Complaint has not asserted a claim for conspiracy. Therefore, the Court need not address the issue of whether the claim is plausible; there is no conspiracy claim asserted.[7]

**D.    Plaintiffs' Claim against the City**

Finally, Defendants argue that Plaintiffs have failed to set forth a valid claim against Defendant City of Flint. Plaintiffs allege in their Second Amended Complaint that Defendant City of Flint "has a pattern and practice, and past historical policy, of discriminating in favor of African-American/black employees and discriminating against Caucasian/white employees as indicated by the following two litigations: (a) *Middleton v. The City of Flint* [92 F.3d 396 (6th Cir. 1996)]; and (b) *Speer v. The City of Flint* [No. 08-13526, 2010 WL 5462477 (E.D. Mich. Dec. 29, 2010)]." (Second Am. Compl. ¶12a). The Court notes that *Middleton* was an action in which an affirmative action policy was challenged and overturned by the Sixth Circuit. In *Speer*, the plaintiff police officer alleged a First Amendment violation after he was disciplined for speaking to the press regarding the Flint Police Department's practices.

For a municipality to be liable for a constitutional violation under § 1983, the violation

---

[7] The Court also notes that Plaintiff did not dispute this finding during oral argument.

must be a result of a policy or custom of the city. *Monell v. Dept. of Social Services*, 436 U.S. 658, 694 (1978). "That is to say, the liability of counties and other local governments under § 1983 depends solely on whether the plaintiff's constitutional rights have been violated as a result of a 'policy' or 'custom' attributable to the county or local government." *Holloway v. Brush*, 220 F.3d 767, 772 (6th Cir. 2000).

Defendants argue primarily that Plaintiffs have set forth conflicting allegations, stating at one point that the individual Defendants acted in violation of "Defendants own rules" but also that the Defendants' actions were taken pursuant to unconstitutional City of Flint policies. (Second Am. Compl. ¶¶ 8, 17). Defendants argue that this inconsistency makes the claim implausible. The Court finds this argument unavailing. Although *Twombly* and *Iqbal* require a plaintiff to set forth a plausible claim, this standard does not go so far as to abrogate the Federal Rules of Civil Procedure which allow that "a party may state as many separate claims or defenses as it has, regardless of consistency." Fed. R. Civ. P. 8(e).

Defendants also argue Plaintiffs' claim against Defendant City of Flint fails because it does not set forth enough facts, and rely upon the Sixth Circuit decision in *Highfill v. City of Memphis*, 425 Fed. Appx. 470 (6th Cir. 2011) to support this argument. In *Highfill*, the Sixth Circuit found the plaintiff failed to establish the defendant city was the "moving force" behind a policy of reverse discrimination when the only evidence presented was the testimony of a few witnesses. *Id*. at 476. This case is easily distinguishable from the instant case as *Highfill* was dismissed on a motion for summary judgment, not a motion to dismiss. Therefore, the Sixth Circuit and the lower court had the opportunity to view actual evidence that the plaintiff was given an opportunity to collect rather than only evaluating allegations. Therefore, the Court

finds that Defendants' arguments are off the mark.

While it is true that mere conclusory allegations will not win the day, Plaintiffs have alleged that the Defendant City of Flint has a documented history of reverse discrimination. (Second Am. Compl. ¶ 12a). Further, Plaintiffs have alleged that the Defendants "had a policy rule, custom, and/or practice of favoring African-American/black Police Officers over Caucasian/while Police Officers, such as Plaintiffs, when it came to the terms and conditions of employment, which included, but not by way of limitation, promotions, provisional and otherwise." (*Id*. ¶ 8). Plaintiffs then allege a scheme by which unfit minorities were promoted over more qualified non-minorities and claim that this scheme was "consistent with effecting and implementing the agreement/policy of favoring African-American/black Police Officers referred to hereinabove paragraphs 8 and 9." (*Id*. ¶¶ 29, 7-42). Given that Plaintiffs have supplied some factual content to their legal claims, the Court can make a plausible inference of wrongdoing.[8] *See Southfield Ltd. Partnership v. Flagstar Bank, FSB*, 727 F.3d 502, 502 (6th Cir. 2013). For these reasons, the Court denies Defendants' request to dismiss these claims.

---

[8] To the extent Defendants appear to argue that Plaintiffs cannot claim the Chief of Police was a policy maker, the Court finds this argument to be premature. Again, Defendants rely on law and arguments based on an evaluation of evidence which is premature at this stage in the litigation.

## IV. CONCLUSION

For these reasons, the Court GRANTS IN PART AND DENIES IN PART Defendants' Motion to Dismiss.

**SO ORDERED.**

                                              s/Paul D. Borman
                                              PAUL D. BORMAN
                                              UNITED STATES DISTRICT JUDGE

Dated: November 7, 2013

### CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on November 7, 2013.

                                              s/Deborah Tofil
                                              Case Manager