UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

WILLIAM SURFACE,

          Plaintiff,

v.

CITY OF FLINT and ALVERN LOCK,

          Defendants.
_____/

Case No. 12-15513

Paul D. Borman
United States District Judge

David R. Grand
United States Magistrate Judge

## **OPINION AND ORDER GRANTING DEFENDANTS' MOTION *IN LIMINE***

In this First Amendment retaliation action, Defendants City of Flint (the "**City**") and Alvern Lock have filed one Motion *in Limine*, seeking to exclude from trial any argument or evidence that falls within certain specified categories. Plaintiff William Surface only contests Defendants' Motion as to one of those categories: evidence regarding Defendant Lock's purported statement in March 2011 that Chad Baldwin, formerly a plaintiff in this action, was transferred out of a particular position because Defendants "needed a black female" in the job.

Given Plaintiff's concurrence with the other aspects of the instant Motion *in Limine*, and because this Court concludes that evidence within the single challenged category would be more prejudicial than probative under Federal Rule of Evidence 403, the Court will grant Defendants' Motion *in Limine* in full.

## I. BACKGROUND

This lawsuit, originally captioned as *Garceau v. City of Flint, et al.*, was filed on December 17, 2012 by ten City of Flint police officers against the City, former Flint police chief Alvern Lock, and former Flint police captain Darryl Patterson. (ECF No. 1, Compl.) Initially, the plaintiffs asserted three causes of action: reverse race discrimination under 42 U.S.C. §§ 1981 and 1983, Fourteenth Amendment harassment and/or retaliation under the same two statutes, and First Amendment retaliation under 42 U.S.C. § 1983. The discrimination claim was premised on allegations that Defendants unconstitutionally favored black officers over white officers in terms of promotions and appointments, and the harassment and retaliation claims were based on allegations that Defendants retaliated against a subset of the Plaintiffs in various ways for opposing Defendants' allegedly discriminatory conduct (including by filing this lawsuit). (*See id.* at 4-11, Pg ID 4-11.)

Plaintiff Surface (hereinafter "**Plaintiff**") was added as a party to this action via the First Amended Complaint on December 12, 2012. (ECF No. 5.) The parties and claims in this lawsuit have changed several times since then. The most recent development in that regard occurred on August 31, 2016, when this Court entered an Opinion and Order granting in part and denying in part two Motions for Summary Judgment that had been filed by Defendants. (ECF No. 65.) The ultimate

effect of that Opinion and Order was the dismissal of all parties and claims in the action except for Plaintiff's First Amendment retaliation claim against two of the original three Defendants (the City and Lock). That claim is grounded in allegations that as an act of retaliation for the constitutionally protected activity of participating in this lawsuit, Plaintiff was subjected to an unjustified 29-day disciplinary suspension in October 2013. The City's justification for the suspension, which Plaintiff claims is bogus, is that Plaintiff used unreasonable force when he participated in the arrest of a man suspected of assault during the City's Back to Bricks festival on August 13, 2013. (ECF No. 47, 3d Am. Compl. ¶¶ 88-103.) The suspension was subsequently overturned in a grievance arbitration on January 26, 2015. (ECF No. 59, Ex. 25.)

A jury trial in this action is currently scheduled for October 16, 2017. On May 8, 2017, Defendants filed the instant Motion *in Limine*, which the parties have fully briefed. (ECF No. 70, Defs.' Mot.; ECF No. 72, Pl.'s Resp.; ECF No. 73, Defs.' Repl.) This Court conducted a hearing on the instant Motion *in Limine* in conjunction with the final pretrial conference in this matter on July 25, 2017, and is now prepared to rule on the Motion.

## II.   LEGAL STANDARDS

The federal procedural and evidentiary rules that govern proceedings before this Court, as well as the cases interpreting those rules, "all encourage, and in some

cases require, parties and the court to utilize extensive pretrial procedures – including motions *in limine* – in order to narrow the issues remaining for trial and to minimize disruptions at trial." *United States v. Brawner*, 173 F.3d 966, 970 (6th Cir. 1999); *see also Louzon v. Ford Motor Co.*, 718 F.3d 556, 560 (6th Cir. 2013) ("A motion in limine is any motion, whether made before or during trial, to exclude anticipated prejudicial evidence before the evidence is actually offered." (internal quotation marks omitted)).

"Motions *in limine* typically involve matters which ought to be excluded from the jury's consideration due to some possibility of prejudice or as a result of previous rulings by the Court." *Provident Life & Acc. Ins. Co. v. Adie*, 176 F.R.D. 246, 250 (E.D. Mich. 1997). District courts have broad discretion over matters involving the admissibility of evidence at trial. *See United States v. Seago*, 930 F.2d 482, 494 (6th Cir. 1991). "[*I*]*n limine* rulings are not binding on the trial judge, and the judge may always change his mind during the course of a trial." *Ohler v. United States*, 529 U.S. 753, 758 n.3 (2000) (citing *Luce v. United States*, 469 U.S. 38, 41-42 (1984)).

### III. DISCUSSION

#### A. The Court will exclude evidence within the categories specified in the uncontested items 1-5 and 7-9 of Defendants' Motion *in Limine*.

Of the categories of evidence that Defendants seek to exclude, Plaintiff represents that all but one are uncontested, though he does "reserve[] the right to

seek this Court's permission to introduce any of those matters should Defendants or Defense Counsel 'open the door' to its relevance." (Pl.'s Resp. at 6, Pg ID 4925.) The uncontested categories, as described by Defendants in the instant Motion *in Limine*, are as follows:

> 1. Citizens Service Bureau & Middleton v. City of Flint ("CSB");
> 2. Comments regarding the Nigger Beating Crew ("NBC") and Defendant Lock saying that he is going to "kick [former plaintiff Robert] Garceau's ass";
> 3. "Garceau and the Gang";
> 4. "Race based Rule of Three";
> 5. Defendant Lock being more critical of white police officers than African American police officers; . . .
> 7. Garceau['s] termination and later reinstatement;
> 8. The other dismissed claims of reverse discrimination and First Amendment retaliation;
> 9. Impermissible Hearsay evidence including but not limited to
>> a. [LEIN] Sting;
>> b. Howe Lott Comparison and alleged statements by Defendant Lock;
>> c. Officer [LaFrambroise]'s testimony regarding Nelson Hadley's comments.

(Defs.' Mot. at 3, Pg ID 4839.)

Because these grounds for the instant Motion *in Limine* are not disputed, the Court will grant Defendants' Motion as to these items.

**B.** **The Court will exclude evidence within the category specified in item 6 of Defendants' Motion *in Limine* because it would pose an undue risk of prejudice.**

The only contested matter raised in the instant Motion is a comment that

5

Defendant Lock made in 2011 that former plaintiff Baldwin was transferred because Defendants "need[ed] a black female" in the position. Defendants argue that any evidence or argument regarding this remark would be both irrelevant under Federal Rule of Evidence 402 and substantially more prejudicial than probative under Federal Rule of Evidence 403. This Court agrees with the second of these two arguments, and on that basis the Court will grant Defendants' Motion *in Limine* as to this challenged evidentiary category.

> In the August 31, 2016 Opinion and Order, this Court found as follows:
>
> In approximately March of 2011, Plaintiff Baldwin was transferred from his position as an officer in the courts to patrol by Defendant Lock. Defendant Lock told Plaintiff Baldwin that the transfer was because, "Well, we need a black female." Defendant Lock then appointed an African-American officer Michelle Tucker to Plaintiff Baldwin's former position in the courts.

(ECF No. 65 at 10, Pg ID 4763 (record citations omitted).)

Defendant Lock's comment was significant to the Court's analysis of the now-dismissed race discrimination claims. Although the Court noted that the comment was the only evidence of racial bias that was not founded on "speculation, inadmissible hearsay [or] misstatements of the record" (*id.* at 34, Pg ID 4787), the Court nonetheless concluded that that remark alone was not enough to support the discrimination claims in this lawsuit. The remark was not sufficiently connected to the provisional appointments that were the subject of the

6

discrimination claims, both because it was remote in time from them, and because it was made in a different context: staffing court officer positions (which the Court observed could require employing female officers for the purposes of searching female inmates) rather than merit-based promotions. (*See id.* at 27, Pg ID 4780.) In light of this, the remark could not reasonably support a finding of racial animus as would support the discrimination claims, particularly given uncontroverted evidence that fewer black officers received provisional appointments at the discretion of Defendant Lock and former defendant Patterson than if the appointments had been made solely based on seniority. (*See id.* at 34-35, Pg ID 4787-88.) The Court therefore held that Defendant Lock's stray remark was neither direct evidence of discrimination nor sufficient circumstantial evidence by itself to permit a reasonable jury to make such a finding. (*See id.*)

Citing this analysis, Defendants argue in the instant Motion that Defendant Lock's comment is irrelevant to what is now the central issue in this action: whether Plaintiff's October 2013 suspension was in retaliation for his participation in this lawsuit as of December 2012. Defendants also argue that admitting evidence of Defendant Lock's remark would pose a serious threat of jury confusion on that issue. Plaintiff counters that such evidence would be relevant and probative on the issues of bias and punitive damages, and asserts that this evidence would not be prejudicial simply because it would be unfavorable to Defendants.

7

Relevance under Fed. R. Evid. 402 and prejudice under Fed. R. Evid. 403 require two distinct inquiries. For the reasons stated below, evidence or argument regarding Defendant Lock's 2011 remark could be relevant, largely owing to Fed. R. Evid. 401's permissive definition of the term. However, such evidence would pose a very substantial risk of jury confusion, and it is therefore unduly prejudicial under Fed. R. Evid. 403. Accordingly, the Court will grant Defendants' Motion *in Limine* as to this evidentiary category as well.

**1. Evidence regarding Defendant Lock's remark would not necessarily be inadmissible as irrelevant under Fed. R. Evid. 401 and 402.**

"Irrelevant evidence is not admissible." Fed. R. Evid. 402. "The standard for relevancy is 'extremely liberal' under the Federal Rules of Evidence." *Dortch v. Fowler*, 588 F.3d 396, 400 (6th Cir. 2009) (quoting *United States v. Whittington*, 455 F.3d 736, 738 (6th Cir. 2006)). Relevant evidence is evidence that "has any tendency to make a fact more or less probable than it would be without the evidence" and "is of consequence in determining the action." Fed. R. Evid. 401.

Defendants argue that Defendant Lock's 2011 comment is irrelevant to the fundamental issue in the case at bar: the extent to which Plaintiff's participation in this lawsuit was a motivating factor in the disciplinary actions that Defendants took against him. Defendants note that the remark was made in a context completely unrelated to Plaintiff's protected activity or his suspension—a conversation about

8

personnel reassignment—and also made significantly long before either of those events took place: approximately 21 months before Plaintiff joined this lawsuit, and approximately 31 months before he was issued a suspension. Plaintiff takes the position that he should be permitted to cross-examine Defendant Lock about the remark for two reasons: to establish bias on Defendant Lock's part, and to "establish the reprehensibility of Defendant Lock's conduct for purposes of punitive damages." (Pl.'s Resp. at 6, Pg ID 4925.)

Neither of Plaintiff's arguments are persuasive. The cases that he cites in support of his bias argument only stand for the general proposition that cross-examination demonstrating that a witness has "a motive or bias which speaks to the reliability of their testimony . . . [should] be allowed." (Pl.'s Resp. at 10, Pg ID 4929 (quoting *United States v. Fieger*, No. 07-CR-20414, 2008 WL 996401, at *3 (E.D. Mich. Apr. 8, 2008) (Borman, J.) (internal quotation marks omitted)).) General principles aside, the relevance of that case to this one is not obvious, and to accept Plaintiff's argument, the Court would have to infer that Defendant Lock's remark in some way demonstrates a general and consistent racial bias that would weaken the credibility of his testimony on whether particular actions by him and the City were retaliatory—as distinct, it should be noted, from whether they were discriminatory, since discriminatory motive is no longer a relevant issue. Given this Court's recognition in the August 31, 2016 Opinion and Order that the remark

9

is minimally probative of racially discriminatory animus in and of itself, that would not be a reasonable inference. The Court rejects this argument.

Plaintiff's argument regarding the factor of "reprehensibility" in punitive-damages determinations is even less persuasive. Plaintiff has done little to develop this argument, nor has he explained why the challenged remark is in any way relevant to showing the reprehensibility of disciplinary action meted out by an employer (or supervisor) as retaliation for taking part in a lawsuit. Particularly in light of the remoteness in time between Defendant Lock's remark and Plaintiff's suspension, the relevance of the remark to "reprehensibility" is all but nonexistent.

Nevertheless, the relevance standard of the Federal Rules of Evidence is "extremely liberal," *Dortch*, 588 F.3d at 400, and it would be premature to determine at this stage that any evidence regarding Defendant Lock's comment would be inherently irrelevant under that standard. For example, Defendant Lock testified in 2014 (and reaffirmed in a subsequent deposition in 2015) that he was of the opinion that black officers had not historically been treated fairly in the Flint Police Department. (See Pl.'s Resp. Ex. 2, July 2, 2015 Deposition of Alvern Lock at 36:3-24.) It is conceivable that Defendant Lock's 2011 remark could be relevant to the question of retaliatory motive if it is considered alongside that testimony, if the operative theory is that the alleged retaliatory motive was motivated at least in part by animus towards parties (like Plaintiff) who challenged practices that

Defendant Lock deemed desirable or necessary to remedy his perceived historical mistreatment of black officers in the department.

In the relevance analysis, the only question is whether the evidence makes a material fact "more or less probable," Fed. R. Evid. 401, and this is not a high bar. The Court will not exclude evidence of Defendant Lock's remark on relevance grounds.

### 2. Evidence regarding Defendant Lock's remark would be more prejudicial than probative under Fed. R. Evid. 403.

Even as the challenged evidentiary category is at least arguably relevant under Fed. R. Evid. 401 and 402, it does not pass muster under the prejudice analysis of Fed. R. Evid. 403, which requires a court to weigh the probative value of evidence against its risk of prejudice in one form or another.

Evidence that is relevant may nevertheless be inadmissible "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. The Sixth Circuit "has interpreted 'unfair prejudice' to mean 'the undue tendency to suggest a decision based on improper considerations; it does not mean the damage to a defendant's case that results from legitimate probative force of the evidence.'" *Sutkiewicz v. Monroe Cty. Sheriff*, 110 F.3d 352, 360 (6th Cir. 1997) (quoting *Doe*

*v. Claiborne County*, 103 F.3d 495, 515 (6th Cir. 1996)).

Defendants argue that evidence regarding Defendant Lock's comment, even if relevant, would pose a substantial risk of confusing issues and thus misleading jurors. This is because it could prompt jurors to evaluate Plaintiff's claim based on whether Defendant Lock excessively disciplined him because of personal racial bias, and not because of a retaliatory motive arising from Plaintiff's participation in this lawsuit. The alleged improper motive at issue in this case now is retaliation for engaging in First Amendment-protected activity—not racial animus. Plaintiff's response is simply that not all unfavorable evidence is unduly prejudicial under Fed. R. Evid. 403,

While Plaintiff's statement is true as a general matter, it has little to do with the very real risk of issue confusion in this case that would accompany any evidence based on Defendant Lock's comment. The introduction of such evidence for any purpose that relates to racial bias—and it is difficult to envision a purpose for introducing such evidence that does not—would palpably threaten to cloud the question of the existence of a First Amendment-retaliatory motive with improper considerations of race discrimination. That risk is then exacerbated by several additional factors. First, topics involving racial animus tend to be emotionally and politically inflammatory generally, and so the evidence could encourage deliberation that is less than carefully considered for that reason. Second, the

perception that a person engages in behavior motived by racial animus very often generates moral opprobrium towards that person, and this could create an additional prejudice risk towards Defendant Lock (and the City by extension) which has little or nothing to do with retaliation. Third, and most importantly, the risk of confusion is especially acute here because this case *did* involve claims related to racial bias and discrimination, and those claims were dismissed. It is not difficult to imagine ways in which jurors could be accidentally or willfully misled to consider factors which until fairly recently were central to this litigation, but are now mostly irrelevant.

Defendants accuse Plaintiff of reframing the issue in this case as being racial bias rather than retaliatory motive, which would be improper given this Court's express ruling that only Plaintiff's participation in this lawsuit is a valid basis for his retaliation claim. (*See* ECF No. 65 at 35, Pg ID 4788.) This characterization is both accurate and troubling, as Plaintiff's discussion of Defendant Lock's comment in his Response focuses almost exclusively on the question of racial bias on Defendant Lock's part.[1] In stark contrast, Plaintiff's Response makes reference

---

[1] For example, after quoting Defendant Lock's deposition testimony regarding the historical treatment of black officers in the department, Plaintiff states: "Obviously, this informs us of Defendant Lock's state of mind as to why he may be using race as a factor in Flint Police Department workplace decisions, as set forth herein above." (Pl.'s Resp. at 8, Pg ID 4927.) Later, Plaintiff argues that "the African-American Defendant Lock's statement that he wanted to replace a white police officer with – in his words – a 'Black' police officer is obviously relevant

13

to the concept of retaliation only once, in an introductory statement: "In the case at hand, Plaintiff Surface has a First Amendment discrimination and/or retaliation case against Defendant Lock and Defendant City of Flint which this Court has determined worthy to go to Trial." (*Id.* at 6, Pg ID 4925.)

There is no such thing as a "First Amendment discrimination" claim. The only claim in this action now is a retaliation claim, based exclusively on the allegation that Defendants disciplined Plaintiff as an act of reprisal for exercising his First Amendment rights by taking part in this lawsuit. Defendant Lock's opinions on race *could* be relevant if they were shown to relate to a retaliatory motive on his part. Otherwise they are not, and racial bias as a motive for Plaintiff's discipline is not a valid basis for his claim. It is the potential confusion of these exact issues that creates the considerable prejudice risk under Rule 403.

In the final analysis, Defendant Lock's 2011 remark meets Rule 401's liberal standard for relevance, but fails Rule 403's balancing test for its intrinsic risk of substantial prejudice as to issue confusion. For those reasons, the Court will grant Defendants' Motion in Limine as to item 6 on Defendants' list of challenged

---

and admissible to establish his bias and/or prejudice to favor an African-American over a white person." (*Id.* at 10, Pg ID 4929.) Perhaps most tellingly, Plaintiff characterizes the incident at the Back to Bricks festival as "Defendant Lock, an African-American man, [taking] sides with another African-American man over the white Plaintiff, Police Officer, William Surface. . . . This event was the genesis of the events leading to Plaintiff's 42 USC §1983 First Amendment claim against Defendant Lock." (*Id.* at 6-7, Pg ID 4925-26.)

topics, and exclude evidence or argument regarding Defendant Lock's 2011 remark.

**C. The Court will exclude the 2015 grievance arbitration opinion overturning Plaintiff's suspension.**

On the record at the July 25, 2017 final pretrial conference and hearing on the instant Motion in Limine, the Court ruled that the 2015 grievance arbitration opinion that resulted in the reversal of Plaintiff's October 2013 suspension will be inadmissible at trial. Accordingly, the Court will exclude that opinion as well.

**IV. CONCLUSION**

For the reasons stated above, the Court GRANTS Defendants' Motion *in Limine* in full. Accordingly, the Court rules evidence or argument regarding any of the specified categories in Defendant's Motion *in Limine* to be inadmissible. Further the parties are reminded that, as the Court stated on the record at the July 25, 2017 hearing and final pretrial conference, the 2015 grievance arbitration opinion that overturned Plaintiff's October 2013 suspension is inadmissible as well.

IT IS SO ORDERED.

s/Paul D. Borman  
Paul D. Borman  
United States District Judge

Dated: August 23, 2017

CERTIFICATE OF SERVICE

      The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on August 23, 2017.

                                                      s/D. Tofil
                                                    Deborah Tofil, Case Manager